**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Weymouth, et al., | No. CV-18-01345-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| County of Maricopa, et al., | |
| Defendants. | |

Pending before the Court is Defendant Maricopa County's Partial Motion To Dismiss For Failure to State A Claim Upon Which Relief May Be Granted (Doc. 42).  Oral argument was held on February 1, 2019.  The Court has now considered the Motion (Doc. 42, Mot.), Response (Doc. 45, Resp.), and Reply (Doc. 50, Reply) along with arguments of counsel and relevant case law.

## BACKGROUND

This case arises from Plaintiffs Brian and Andrea Weymouth's Complaint, originally filed on January 25, 2018, in the Maricopa County Superior Court, and removed to this Court by Defendants on May 1, 2018.  Plaintiffs then filed a First Amended Complaint (Doc. 38, "FAC") on July 25, 2018.  In the FAC, Plaintiffs bring claims against Maricopa County, Brian Mackiewicz, Brian and Shawn O'Connor, and multiple unnamed defendants.  The claims stem from Plaintiffs' allegations that Plaintiffs' property was seized and impounded by the Maricopa County Sheriff's Office, and then retrieved by

Defendant Brian O'Connor, without permission from the Plaintiffs and without a court order. (FAC ¶¶ 27–28, 34–37). In regard to Defendant Maricopa County ("Defendant County"), Plaintiffs bring Count Sixteen for "Unconstitutional Policies, Practices and Customs/42 U.S.C. § 1983" and Count Seventeen for "Failure to Train/42 U.S.C. § 1983." (FAC ¶¶ 194–215). Defendant County now moves to dismiss Count Seventeen of Plaintiffs' First Amended Complaint for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6).

## DISCUSSION

### I. LEGAL STANDARDS

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v.*

*Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

## II.    ANALYSIS

### a.  Municipal Liability

"Neither state officials nor municipalities are vicariously liable for the deprivation of constitutional rights by employees." *Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1158–59 (9th Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). A municipality may, however, be liable under § 1983 if a plaintiff shows "that a policy or custom led to the plaintiff's injury," and "that the policy or custom . . . reflects deliberate indifference to the constitutional rights of its inhabitants." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1073 (9th Cir. 2016) (citations and quotation marks omitted). A municipality may only be held liable for the inadequacy of police training if Plaintiff shows "(1) he was deprived of a constitutional right, (2) the [municipality] had a training policy that amounts to deliberate indifference to the constitutional rights of the persons with whom its police officers are likely to come into contact; and (3) his constitutional injury would have been avoided had the [municipality] properly trained those officers." *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007) (quotation marks, brackets, and citations omitted); *see also City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (municipality may only be held liable for the inadequacy of police training "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact," and the policy was "the moving force [behind] the constitutional violation") (quotation marks omitted). However, a "municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (quoting

*Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410 (1997)). "[T]he need for more or different training [must be] so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Castro*, 833 F.3d at 1076 (9th Cir. 2016) (quoting *Canton*, 489 U.S. at 390). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quoting *Bryan Cty.*, 520 U.S. at 409). "After all, '[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.'" *Hein v. City of Chandler*, No. CV-15-01162-PHX-DJH, 2016 WL 11530432, at *6 (D. Ariz. Sept. 16, 2016) (quoting *Connick*, 563 U.S. at 62). Although a pattern is ordinarily necessary, "there exists a 'narrow range of circumstances [in which] a pattern of similar violations might not be necessary to show deliberate indifference.'" *Flores*, 758 F.3d at 1159 (quoting *Connick*, 563 U.S. at 63) (alterations in original).

Here, Defendant County first argues that Plaintiffs have not alleged a "pattern" of similar constitutional violations. In response, Plaintiffs contend that they have "specified ***two*** distinct events, one occurring in 2011 and the other in 2015, where the Property Clerks permitted Plaintiffs' personal property to be distributed to Defendant O'Connor without Plaintiffs' permission or authority from the Maricopa County Superior Court," and that "the Property Clerks demonstrated ***consistency*** in their denial of Plaintiffs' constitutional rights having distribut[ed] Plaintiff's property to a stranger on *two* occasions." (Resp. at 5) (emphasis in original). Plaintiffs further assert that the Defendant County may be liable even with "one" isolated event. (Resp. at 8).

This Court has continuously recognized that complaints lacked allegations of a "pattern" when plaintiffs alleged only a single incident. *See*, *e.g.*, *Ericson v. City of Phoenix*, No. CV-14-01942-PHX-JAT, 2016 WL 6522805, at *21 and n.13 (D. Ariz. Nov. 3, 2016) (noting that plaintiff must proceed on a single incident theory because plaintiff

- 4 -

cited "to no incident besides the one in this case"); *Hein*, 2016 WL 11530432, at *7 ("[T]he FAC does not allege a pattern of similar violations, namely, of other officers citing and arresting people to discourage them from filing lawsuits against the City."). But alleging more than one incident does not automatically create a "pattern." The Ninth Circuit has affirmed a district court's granting of a motion to dismiss a claim for failure to train when plaintiff alleged that the defendants were on notice of the lack of proper training following another officer's conviction approximately five years earlier. *Flores*, 758 F.3d at 1159 ("The isolated incidents of criminal wrongdoing by one deputy other than [the Deputy involved in the case at hand] do not suffice to put the [defendants] on 'notice that a course of training is deficient in a particular respect,' nor that the absence of such a course 'will cause violations of constitutional rights.'") (quoting *Connick*, 563 U.S. at 62).

The Court finds the facts as alleged do not create a pattern to put Defendant County on notice of Defendant's inadequacy of training. Additionally, there are no facts alleged to support a finding that this is a case fitting in the narrow set of circumstances when a pattern is not necessary. *See* Ericson, 2016 WL 6522805, at *20 ("In explaining this 'narrow range of circumstances,' the Supreme Court hypothesized that where a municipality 'arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force,' a pattern of similar violations would not be necessary to show deliberate indifference.") (quoting *Connick*, 563 U.S. at 63).

Defendant County also contends that Plaintiffs make "conclusory allegations of the existence of a 'training program' without context, description, or factual support," and that "there is no allegation that the County deliberately chose a training program that would cause constitutional violations of this alleged nature." (Resp. at 4). Under Count Seventeen, Plaintiffs allege that "Maricopa County has a training policy for its employees and agents responsible for the Evidence and Property Division that is deliberately indifferent to the constitutional rights of the persons whose property is likely to be seized and impounded in the Maricopa County Evidence and Property Division" and that

"Plaintiff's damages would have been avoided had Maricopa County properly trained its employees and agents responsible for the Evidence and Property Division." (FAC at ¶¶ 213–214). These allegations appear to be no more than "[t]hreadbare recitals of the elements of a [failure to train] cause of action, supported by mere conclusory statements," which do not meet the pleading standard articulated in *Iqbal*.

Plaintiffs respond to Defendant County's Motion, pointing to ¶¶ 31, 36–40 of the FAC asserting that from these paragraphs, it can be "reasonably . . . infer[ed] that the Property Clerks were not trained to recognized Plaintiffs' constitutional rights." (Resp. at 6). The paragraphs referenced by Plaintiffs read as follows:

> 31. However, when Mr. Weymouth contacted the Maricopa County Sheriff's Office Property and Evidence Division to arrange the return of his personal property he learned that all of his personal property had been released, without Mr. Weymouth's permission or the Court's Order, to Defendant Brian O'Connor. Mr. Weymouth was told that Detective Mackiewicz used the County's computer system to authorize the release of Mr. Weymouth's personal property to Defendant Brian O'Connor.

> 36. The Weymouths never gave anyone permission to retrieve their property.

> 37. The Court never ordered the release of the property to anyone other than the Weymouths.

> 38. The Court never made an order or any other determination that anyone other than Weymouth was the owner of the property.

> 39. The records provided by the Property and Evidence Division indicate that Defendant Brian O'Connor retrieved some of Mr. Weymouth's personal property in 2011. He did so either using his rank and privilege with the Maricopa County Sheriff's Posse, with Brian Mackiewicz' rank and status as lead investigator in the criminal case, or both. He also did so without Mr. Weymouth's permission and without the authority of the Superior Court.

40. Astonishingly, on September 23, 2015 Defendant Brian O'Connor returned to the Property and Evidence Division to take the remainder of Mr. Weymouth's personal property. Again, he did so either using his rank and privilege with the Maricopa County Sheriff's Posse, with Brian Mackiewicz' rank and status as lead investigator in the criminal case, or both. He also did so without Mr. Weymouth's permission and without the authority of the Superior Court.

Specifically, Plaintiffs assert that from the aforementioned paragraphs, it can reasonably be inferred that (1) "there is a computer system that would provide the Property Clerk with the ability to track the property and its owner," and that "the Property Clerks did not do so because they were not trained to do so"; (2) "Property Clerks were not trained to ask about the ownership of the property or verify with the computer or Superior Court orders"; and (3) "Property Clerks were not trained to ask for a court order or any other documentation related to the ownership of the property." (Resp. at 7).

However, merely describing a course of events that allegedly violates constitutional rights does not necessarily lead to an inference that such events occurred because of a failure in training. Such an assumption would appear to violate the standard set out in *Iqbal*. Furthermore, the FAC "does not identify what the training . . . practices were [or] how the training . . . practices were deficient[.]" *Hein*, 2016 WL 11530432, at *7 (citing *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1149–50 (E.D. Cal. 2009)).

Even taken in the light most favorable to Plaintiff, it is a far stretch to infer from the aforementioned paragraphs that the alleged violation occurred because the Property Clerks were not properly trained. Plaintiffs have provided no more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. Accordingly, Plaintiffs have failed to state a claim for relief in regard to Failure to Train, and Count Seventeen is therefore dismissed.

**III. Leave To Amend**

In the final sentence of its Reply to Defendant County's Motion to Dismiss,

Plaintiffs request leave to amend the Complaint if the Court finds Plaintiffs failed to state a claim upon which relief may be granted. (Resp. at 10). Defendant County makes no mention of Plaintiffs' request to amend in its Reply.

"After a party has amended a pleading once as a matter of course, it may only amend further after obtaining leave of the court, or by consent of the adverse party." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (citing Fed. R. Civ. P. 15(a)). "Generally, Rule 15 advises the court that leave shall be freely given when justice so requires." *Id.* (quotation marks omitted). "The power to grant leave to amend . . . is entrusted to the discretion of the district court, which determines the propriety of a motion to amend by ascertaining the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility." *Weber v. Allergan Inc.*, No. CV-12-02388-PHX-SRB, 2016 WL 8114210, at *2 (D. Ariz. Feb. 17, 2016) (quotation marks omitted) (citing *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010)); *see also Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) ("A trial court may deny [a motion for leave to amend] if permitting an amendment would prejudice the opposing party, produce an undue delay in the litigation, or result in futility for lack of merit."). "[L]eave to amend should be denied as futile 'only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.'" *Barahona v. Union Pac. R.R. Co.*, 881 F.3d 1122, 1134 (9th Cir. 2018) (quoting *Sweaney v. Ada County*, 119 F.3d 1385, 1393 (9th Cir. 1997)).

Local Rule 15.1 requires that the party seeking leave to amend "must attach a copy of the proposed amended pleading as an exhibit to the motion[.]" Plaintiffs have failed to attach a copy of the proposed pleading, as is required by Local Rule 15.1. The Court therefore cannot make a determination on whether such amendment would be futile. *See also Aguirre v. Amchem Prod. Inc.*, No. CV 11-01907-PHX-FJM, 2012 WL 760627, at *2 (D. Ariz. Mar. 7, 2012) (noting that the Court could not "evaluate whether amendment would be futile" when plaintiff did not attach a copy of the proposed pleading in accordance with Local Rule 15.1). The Court denies Plaintiffs' request to amend the Complaint.

Accordingly,

**IT IS ORDERED** that Defendant County's Motion to Dismiss Count Seventeen is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' request for leave to amend the Complaint with respect to Count Seventeen is **DENIED**. Should Plaintiffs choose to renew their motion for leave to amend Count Seventeen, such motion must be in compliance with Local Rule 15.1 and be filed no later than February 15, 2019.

Dated this 4th day of February, 2019.

Honorable Susan M. Brnovich
United States District Judge