**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Brian Weymouth, et al., | No. CV-18-01345-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| County of Maricopa, et al., | |
| Defendants. | |

Pending before the Court is Defendants' Joint Phase One Motion for Summary Judgment (Doc. 83). The Court has read and considered the motion, response and reply and enters the following Order.

**I.    BACKGROUND**

    **a. Factual Background**

Tthree men—Defendant Brian O'Connor (hereafter "O'Connor"), Plaintiff Brian Weymouth ("Weymouth"), and non-party Daniel Wergin (hereafter "Wergin")—formed two Arizona limited liability companies (collectively, the "LLC's") which attempted to profit off the name, likeness and reputation of the legendary Mexican boxing champion, Julio Cesar Chavez. (Doc. 84, "DJSOF" ¶ 1.) The first, Julio Cesar Chavez Campeones One, LLC (hereafter "Campeones"), involved the development, construction and operation of a boxing-themed restaurant in Mesa, Arizona. (DJSOF ¶ 2; *see also* Doc. 84 Ex. 2, "Campeones Agreement".)  The second, Julio Cesar Chavez Bebidas, LLC (hereafter "Bebidas"), involved the development, manufacture and sale of a boxing-themed energy

drink. (DJSOF ¶ 3; *see also* Doc. 84 Ex. 3, "Bebidas Agreement".)

The three men played identical roles in each LLC.  Wergin and Weymouth held forty-five percent interests as co-managers of both Campeones and Bebidas.[1] (DJSOF ¶¶ 8-9.)  The outstanding ten percent interest fell to O'Connor, who remained a member of both LLC's.  (DJSOF ¶ 10.)  As principal financier for both enterprises, Wergin loaned Campeones in excess of $3.7 million and was to be paid out of the proceeds of the enterprise.  (DJSOF ¶ 16; Doc. 87, "PSOF" ¶ 3; *id.* Ex. 1, 63:1-6.)  The distribution of Campeones profits reflected Wergin's outsized investment.  Unless otherwise agreed to by the Manager, the parties allocated seventy five percent of proceeds from Distributable Cash towards repayment of Wergin's loan until the loan obligation was satisfied in full.  (DJSOF ¶ 14.)  Any residual proceeds would be distributed to Members in proportion to their respective percentage interests in the LLC at the date of distribution.  (*Id.*)  Wergin also covered unexpected, additional costs during construction of the restaurants.  (DJSOF ¶ 17.) As grantor of the Wergin Family Irrevocable Dynasty Trust-2005 ("Wergin Family Trust" or the "Trust"), Wergin directed the Trust to purchase all kitchen and audio-visual equipment for Campeones. (DJSOF ¶ 18.)  The Wergin Family Trust bought the equipment solely in its name, then leased it to Campeones.  (DJSOF ¶ 19.)

Although it invoked the Julio Ceasar Chavez's likeness, Campeones could not replicate Chavez's in-ring success nor match the fighting spirit of the legendary pugilist— the Campeones restaurant shuttered its doors in May 2010, just seven months after opening.[2]  (DJSOF at ¶ 20.) Following Campeones failure, Weymouth, with new partners, reopened the same building with new name and new theme.  (PSOF ¶ 4; DJSOF ¶ 23.)  Recast as a country-themed restaurant, AZ Country, opened in July 2010, using equipment belonging to Campeones which remained on the premises.  (PSOF ¶ 5; DJSOF ¶ 24.)  Another doomed venture, AZ Country closed in October 2010.  (PSOF ¶ 9.)  Weymouth incorrectly

---

[1] Weymouth replaced O'Connor as co-manager of Bebidas. (DJSOF ¶ 12.)
[2] Despite the restaurant's failure, Cesar Chavez Campeones One, LLC has not been dissolved, (DJSOF ¶ 32), nor were the dissolution, winding up, liquidation and distribution of assets procedures established in the Campeones Agreement followed. (*Id.* ¶¶ 33-34.)

claimed ownership to Campeones equipment in AZ Country's UCC filings.[3] (DJSOF ¶ 28) He later removed the restaurant equipment owned by the Wergin Family Trust and leased to Campeones and placed it in storage units rented in his own name sometime in October or November. Weymouth subsequently attempted to sell the restaurant equipment. (PSOF ¶ 10; DJSOF, Ex. 1, ¶ 20.)

Wergin and O'Connor reported the theft to the Maricopa County Sherriff's Office ("MCSO"). (DJSOF ¶ 35.) MSCO's subsequent investigation led to Weymouth's arrest and eventual guilty plea. In the course of the investigation, the MCSO seized the property held in Weymouth's rented storage units and home pursuant to two search warrants. (*Id.* ¶ 36.) The storage unit contained stage equipment, sound equipment, cash registers, coolers, and other items removed from what Following its investigation, MCSO released the seized property. Finding some of the property belonged to Weymouth, on or about May 5, 2011, MCSO released several personal computers to Weymouth's wife, Andrea. (PSOF 13; DJSOF ¶ 43, Ex. 13.) Determining that other property belonged to Bebidas, on or about May 11, 2011, MCSO released the Bebidas property—primarily drink coolers originally purchased by Bebidas and emblazoned with Julio Caesar Chavez's likeness—to O'Connor. (PSOF ¶ 14; DJSOF ¶ 45, Ex.14.) MCSO later released the remaining kitchen and audio-visual equipment that Wergin and O'Connor had reported stolen to O'Connor on or about September 23, 2015. (DJSOF ¶ 52.)

### b. Procedural Background

Weymouth filed his Amended Complaint, (Doc. 38), on July 25, 2018 raising 17 claims, eight of which claims were voluntarily dismissed on August 27, 2018. (*See* Doc. 47.) The remaining claims all relate to the alleged wrongful release of Weymouth's personal property to Defendant O'Connor. Weymouth claims that this property included business records, personal computers/hard drives, stage/music equipment and irreplaceable collectors' items. Recognizing that Weymouth's ownership claims required verification,

---

[3] Weymouth later pleaded guilty to tampering with a public record as a result of the misrepresentations in these UCC-1 statements claiming ownership of the equipment leased to Campeones by the Wergin Family Trust. (DJSOF ¶ 39.)

- 3 -

the parties agreed to a bifurcated discovery schedule. (Doc. 67).  The Court ordered Weymouth to "update his MID Responses to include a statement as to the basis of the claimed ownership of each item of the subject property no later than **Friday March 15, 2019**." (Doc. 69 at p.1 (emphasis in original)).  His statements of ownership related to the MCSO Transfer Receipts were also required to state "clearly" whether he believes items other than those listed on the receipts are at issue and list such items "with specificity as well as the basis for his claim" of ownership.  (*Id.*)  Weymouth's First Supplemental MIDP Response identified some equipment and produced the Bebidas Agreement, Campeones Agreement, Campeones Articles of Termination, and the Arizona Department of Liquor Licenses and Control File Deactivation Form and License Surrender to support his claims.  (DJSOF ¶ 69.)  But aside from later deposition testimony claiming ownership to specific items, (*see* DJSOF ¶¶ 89-92), Weymouth provides no other documentation to support his ownership claims.

Emphasizing the tenuous nature of Weymouth's claims, Defendants jointly filed the pending motion seeking a ruling that Weymouth cannot meet his burden of proof of ownership required for his claims or, in the alternative, an order limiting the claim for damages to a small category of property where Weymouth's ownership claim is even possible. (*See* DJSOF ¶¶ 91-92.)

**II.     LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is any factual issue that might affect the outcome of the case under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id.*  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). The court need only consider the cited materials, but it may also consider any other materials in the record. *Id.* 56(c)(3). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of demonstrating to the Court the basis for the motion and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. If the movant fails to carry its initial burden, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). If the movant meets its initial responsibility, the burden then shifts to the nonmovant to establish the existence of a genuine issue of material fact. *Id*. at 1103. The nonmovant need not establish a material issue of fact conclusively in its favor, but it "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmovant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 247–48. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). However, in the summary judgment context, the Court believes the nonmovant's evidence, *id.* at 255, and construes all disputed facts in the light most favorable to the nonmoving party, *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). If "the evidence yields conflicting inferences [regarding material facts], summary judgment is improper, and the action must proceed to trial." *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002).

**III.   DISCUSSION**

Defendants' motion for summary judgment asks a straightforward question: Can Weymouth establish any claim to ownership of the property that forms the basis of his legal claims? Put simply: no, he cannot. Aside from unsupported, self-serving testimony,

Weymouth offers no evidence to that infers his personal ownership of the property in dispute, much less conclusively establish his ownership in fact. Relatedly, his legal arguments fail to support his claims. Weymouth's ownership claims touch on three categories of property: (1) property initially belonging to the LLC's; (2) property purchased by AZ Country; and (3) items to which he claims personal ownership.

Weymouth's personal ownership claim pertaining to the first category of property rests on the argument that O'Connor and Wergin, his partners in the LLC's, "wrested Bebidas[4] from Weymouth and abandoned Campeones." (Resp. at 7.) But, in support of this claim, Weymouth concedes much and offers little. At the outset, Weymouth admits that most of the property seized by MCSO and later released to O'Connor belonged to either Campeones, Bebidas, or the Wergin Family Trust.[5] (*See* Doc. 88, "PCSOF" ¶¶ 38, 40-41, 46, 52, 56-58.) He also acknowledged that some of his personal property was released to his wife. (Doc. 88 ¶ 43.) And in response to this Court's order to show proof of actual ownership to the disputed property, Weymouth returned to the Court largely empty-handed. He offers no evidence that he owned any of the items he alleges Defendants misappropriated, nothing to indicate the monetary value of the items, or any documentation that could reasonably support his ownership. He provides only self-serving deposition testimony.

Lacking proof of ownership, Weymouth argues that he owns the Campeones property because O'Connor and Wergin abandoned their interest in Campeones, leaving him has the sole remaining partner. No doubt, common law abandonment exists as a cognizable claim in Arizona, *see Grande v. Jennings*, 229 Ariz. 584, 588, 278 P.3d 1287, 1291 (Ct. Ariz. App. 2012), but Weymouth's haphazard citation of a few Arizona cases applying abandonment in the context of tangible personal property hardly convinces the Court to apply common law personal property principles to contravene the existing, valid

---

[4] Outside of this solitary assertion in a subheading of his response, Weymouth offers no argument or information to support the claim that "

[5] Of course, Weymouth, who brings the instant claims in his personal capacity, cannot claim injury from the misappropriation of property that belongs to the LLC's. *See* A.R.S. § 29-653(A).

operating agreements, (*see* Campeones Agreement; Bebidas Agreement), ignore their dissolution and winding up provisions, and instead transfer ownership of property belonging to the LLC's to Weymouth personally. They do not establish that individual members of an LLC can abandon their interests in the LLC in a way that eviscerates the validity of the applicable operating agreements or state statutes governing them.

Weymouth specifically argues that Wergin and O'Connor abandoned their interest in Campeones by surrendering the Campeones liquor license. Setting aside that claim's dubious nature, and assuming *arguendo* that abandonment occurred, Weymouth *still* has no claim to personal ownership of the property. After all, he concedes much of the property at issue was *leased* to Campeones and owned by the Wergin Family Trust or owned by Bebidas outright. (PCSOF ℙ 52.) Thus, even if Wergin and O'Connor had abandoned their interest in Campeones, the Wergin Family Trust (or Bebidas) would retain ownership to the leased property, not Weymouth. So, as a factual matter, Wergin and O'Connor's surrender of the LLC's liquor license creates no triable issue of fact bearing on Weymouth's claim of personal ownership.

Weymouth's claims of personal ownership to property he admits belongs to AZ Country similarly lack support. Indeed, the claim relies entirely on Weymouth's personal, self-serving deposition testimony where he asserts, without providing any documentation or evidence of any kind, that his fifty percent interest in AZ Country's ownership entitles him to fifty percent of the value of the property seized. (Resp. at 9.) However, he cites no authority for the proposition that he has a personal interest in property owned by the LLC. Under Arizona law, "[r]eal property and personal property owned or purchased by a limited liability company may be held, owned and conveyed in the name of the limited liability company." Ariz. Rev. Stat. Ann. § 29-653; *see also Joshua David Mellberg LLC. v. Will*, No. CV-14-02025-TUC-CKJ (LCK), 2019 WL 6711480 (D. Ariz. November 25, 2019) (finding that, without establishing an interest in an LLC's assets, a plaintiff's 50% ownership stake was insufficient to support the plaintiff's personal injury); *Rose Goodyear Props., LLC v. NBA Enters. Ltd. P'ship*, 236 Ariz. 339, 345, P.3d 86, 92 (Ct. App. 2014)

("A claim is derivative rather than direct if it alleges injury to the LLC or to its property as a whole."). Without establishing a personal interest in AZ Country's assets, Weymouth cannot seek personal recovery for damage to AZ Country property. Again, he would not have any claim of ownership to that property until, and unless, the company had been dissolved, wound up, and its debts and liabilities paid. *See* A.R.S. § 29-708. Weymouth's self-serving assertions fall far short of creating a genuine issue of material fact. *See Marks v. United States*, 578 F.2d 261, 263 (9th Cir. 1978) (holding that "[c]onclusory allegations unsupported by factual data will not create a triable issue of fact" allowing a party to survive a summary judgment motion).

The same is true for the final category of disputed property—property Weymouth claims he personally owned prior to the MCSO seizure. Here again, the only evidence to support ownership of the personal property and that of AZ County is Weymouth's deposition testimony. He has no receipts, no billing statements or inventory lists, no witness statements or supporting affidavits, and no insurance schedules or other proof of ownership.[6] Indeed, aside from his own assertions and rough estimates of the monetary value of certain items,[7] nary a shred of proof establishes he owned *any* of the property at issue prior to the seizure. But the Court cannot simply take Weymouth at his word. Self-serving affidavits or deposition testimony may be cognizable motions for summary judgment if they go beyond conclusions to include facts that would be admissible in evidence, *see United States v. Shumway*, 199 F.3d 1093, 1103-04 (9th Cir. 1999), but "a conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact," *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997); *see also Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001) (summary judgment inappropriate where plaintiff set forth facts directly relevant to the claim with "great specificity"). Thus, standing alone, Weymouth's bare assertions are insufficient to create a material issue of fact and defeat a motion for

---

[6] Weymouth contends that proof of ownership was included in boxes seized by MCSO. He did not however seek further discovery under Fed. R.Civ. Pro. 56(d).
[7] Weymouth estimates the value of such property—documents, personal computers, and miscellaneous items—at $1,610.00. (Resp. at 9.)

summary judgment. *Liberty Lobby*, 477 U.S. at 247–48. Weymouth "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co*, 475 U.S. at 586; *see also Liberty Lobby, Inc.*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient."). Here, he has not done so.[8]

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** GRANTING Defendants' Joint Phase One Motion for Summary Judgment, (Doc. 83).

**IT IS FURTHER ORDERED** DIRECTING the Clerk of Court to enter Judgment and terminate this action.

Dated this 26th day of May, 2020.

_____
Honorable Susan M. Brnovich
United States District Judge

---

[8] After review of the evidence, Weymouth's claims regarding this latter category of property represent his only plausible claims of ownership as he admits the remaining belonged to Campeones, Bebidas, the Wergin Family Trust, or AZ Country. But a plausible claim for relief does not establish a genuine dispute of a material fact. Merely because Weymouth's proof of ownership for the property in question may have been, as he claims, among the items seized and wrongfully released, does not excuse the failure to furnish any evidence whatsoever to support of his ownership of the items.

- 9 -